Upon the trial plaintiff's counsel produced the indentures, and read them to the jury, whereby it appeared that the covenants were introduced in the former part of the instrument as between the chairman of the court, but not with his successors, of the one part, and the defendant of the other; and in a subsequent part the name of the apprentice was put for the name of the chairman, which rendered the whole writing insensible.
It was objected on the part of the defendant that this bond is not made pursuant to 1762, ch. 5, sec. 20, which directs it to be with the chairman and his successors, and therefore it was not such a writing as could be prosecuted in the name of the successors of the presiding justice named in the indentures; and that this action being in the name of the successor, the present chairman, could not be supported; and, moreover, that the covenants being insensible, by the mistake in the subsequent part of it, was therefore wholly vitiated, and that no action whatever could be supported on it. It begins as a covenant intended to be made with the presiding justice, and then recites an agreement with the apprentice. These objections were reserved for further consideration after the verdict should be taken, which was agreed to be made subject to the opinion of the Court upon them. Accordingly the jury gave a verdict that the covenants were not performed, and assessed damages; and afterwards, on a subsequent day in this same term, the objections were argued, and the Court gave their opinion.
The first objection here is that the covenants are not made with the successors of the presiding justice as well as with (145) himself, and for that reason it is argued the successor cannot maintain this action, as he might have done had these words been inserted. The second is that the covenant produced is insensible, through the mistake of inscribing the name of the apprentice in the subsequent part of the indenture instead of the name of the presiding justice, as it should have been.
As to the first, though it be the general rule that a personal chattel cannot go in succession to a sole corporation, yet it was the clear intent of this act that indentures of apprenticeship should be sued in the name of the presiding justice and his successors; and if an action cannot be maintained in the name of the successor, when the presiding justice is dead, as in the present case, it will be difficult to say in whose name it shall be brought so as to answer the purposes of justice. It might be *Page 105 
objected, with propriety, that the executors of the former presiding justice could not maintain it because they are not named any more than the successors, and at the making of the covenant there was no intention in the contracting parties that an action ever should be maintained by executors. The law itself not intending the action to be brought by executors, hath not declared them trustees for the apprentice; and should they be allowed to maintain the suit and effect a recovery, they would also be entitled to receive the money, and the court could not say they are only trustees. In all cases at law the person who maintains the suit is entitled to the benefit of it, unless in those special cases where he is by statute declared to be a trustee and a nominal plaintiff only. Suppose, in the present case, the executors may be considered in the light of trustees, they may then assign a breach of covenant as having not been performed; but how can they aver it to be ad damnum ipsorum, who in truth have sustained no damages, as not being the legal father or guardian of the rights of the apprentice? If neither the executors nor yet the successor can maintain this suit, much less can the apprentice himself maintain it, for the covenant is not made with him, nor can be by law; and should the objection prevail against the right of the successor, the covenant would be wholly invalid, and the injured apprentice left without remedy. It would be improper, therefore, for the Court to give a ready ear to this objection. The indentures are either made under the authority of the act 1762, or they are void; for if not made under that act, then what power had the presiding justice to make any covenant relative to the orphan, or to bind him at all? Or how can (146) the defendant justify his taking the orphan at all into his service? It will be improper to pronounce the covenant to be void, for that will defeat the plain intent of the parties and the ends of justice; and the Court will support it if possible. It is a rule that whatsoever is sufficiently implied, need not be expressed; and the act hath directed the covenant to be with the presiding justice and his successors, principally with a view of pointing out the party who was to bring the action in case of a breach of the covenant and the death of the presiding justice. Had the word successors been omitted in the act, doubts might have arisen for want of an express declaration respecting the proper person to bring suit after the death of the presiding justice; which doubt is prevented by the addition of the words successors in the act. It here has only the effect of pointing out decisively the person that is to sue upon such an event; but yet the covenant without the words successors has precisely the same legal properties and consequences attached to it as it would have with it; for whenever the maker of a personal contract acts as an agent for the benefit of others, by appointment of law, in an official *Page 106 
character and in the name of his office, which is to be perpetually continued, such contract belongs to him only in his public character and, whenever he becomes divested of that, will belong to the same character, though sustained by another individual. It is true, there are some cases in the books where the law will not allow of the succession of a personal chattel at all; as anciently in the case of abbots, bishops, and others, from policy and mistrust of these characters, lest under the pretence of advancing the interests of religion they might draw from the people more wealth than was consistent either with the circumstances of individuals, or that moderate degree of power and influence flowing from wealth in which it was prudent to keep the ecclesiastics and other sole corporations. But in almost every case where the official character is conferred with a view to its being exercised for the benefit of others, a personal chattel, or the right to sue upon a personal contract, devolves to the successor upon the death or removal of the former officer. Thus, in England, the king, by operation of law, has a public capacity and perpetual existence, and may contract in that character for the benefit of the public; and in case of the death of the individual who sustains the office the personal chattels and rights to personal things which he had in that character shall go to his successor. Wood's Inst., (147) 113, 21; Co. Litt., 90a; 11 Rep., 92, and in his case the word successors is implied, though not expressed in the contract; as in the instance of a recognizance taken in court, the cognizer only acknowledges himself indebted to the king, not saying "and his successors"; yet the successor is entitled to sue for the money due upon it. The law will not permit the executors of the predecessor to recover it — persons in whom the public hath placed no confidence, and are not of public appointment. Here the omission of the word successors does not render the transaction void. Upon the death of the officer, his successors are comprehended in the name of his office. In the case of the president of a college, where a statute directs a suit for the breach of the statute to be brought by the president for the time being, if the president sue and recover, the successor and not the executor shall sue out the sci. fa., for the character or office of president still continues. Cro. Jac., 159; 4 Bac. Ab., 411. Here the statute said nothing of successors, but they were implied in the name of the office. If an orphan bond be made to the chamberlain of London in the name of his office, and he died, his successors, not the executor, shall institute the suit for the benefit of the orphan. 4 Rep., 65; 4 Inst., 249. So in the present case the chairman or presiding justice acted only in his official character for the benefit of another, the orphan; and though the individual who sustained that office be dead, yet the office itself still has a legal existence, and *Page 107 
capacity to be exercised by another. It is the same office now as it was then, and confers upon the individual who exercises it all the same powers his predecessor had, and that of commencing this suit amongst others; and the very name of the office implies all the successors that ever shall be to it — like the case of church wardens, who are instituted by law for the benefit of parishioners, to transact various kinds of business for them, and, so far as regards that, to have a corporate capacity of commencing suits. If they sue whilst church wardens, and their year expires before the determination of the suit, it shall be continued by their successors, and will not abate; which proves that it is the name of the office, and not the adjunct name of the individual, that the law regards. Stra., 852; Cro. El., 145, 179; 1 Lev., 177. Great indeed would be the evil if the law were not so, and the name of the individual and not that of the office were to be principally attended to. The officer is continually changing by death, resignation, removal, and other (148) occurrences. Some offices are but of annual duration, and the officer must necessarily be removed before a suit could be carried through all its different stages. Were his going out of office to operate an abatement of the suit instituted for the sole benefit of another, justice might be greatly hindered, and in some instances be rendered wholly impossible to be obtained. The Governor of this State is an instance. Almost all bonds for money due or to become due to the public are taken in his name as Governor. There can be no doubt that either he or his successors must bring suit; the law will not trust his executors. Were suits instituted by him to be abated by his going out of office, how many of the public demands would be lost? His election is annual as to him, his office is but of a year's duration, and it generally takes up a longer time than that, at least in many instances, before a suit can be determined. It would be monstrous to say that suits should abate in such cases; yet if his successor is not implied and included in the name of the office the suit must abate, there being no real plaintiff to support it. It is, therefore, a position subject to no doubt that when a governor, presiding justice, or other officer entrusted by law to take bonds for the benefit of others does take them accordingly, though without making them payable to his successors, that the successor may, notwithstanding, commence actions upon them, and in case of his death after the institution of an action, and before its determination, that that action may be continued by his successor without any abatement. (In England, however, the name prefixed to the office in the king's case is so far regarded that the death of the individual abates the writ. 7 Rep., 31a.) And this right of the successor to sue, though not named, holds in all cases except where the law directs otherwise; as in the case of guardian bonds, which by *Page 108 
the 7th section of 1762 are to be sued by the executors, and other cases where the law directs an assignment to the party grieved. In some of which, perhaps, a suit may be maintained in the name of the assignee. N. Car. La., 29, sec. 5. But such bonds are not suable by executors generally; for then they might receive the moneys of others, without security given to pay them into the proper hands. They might also, upon improper motives, either refuse to sue or dismiss the suits when brought, or give releases or enter retraxits, at their pleasure, and the utmost confusion, uncertainty, and fraud be introduced; for if (149) executors should once be acknowledged to be the proper persons to sue, they must be also allowed to be the proper persons to do all these acts. And there is no foundation in reason to say that the omission of the word successor shall defeat the instrument entirely. The objection, therefore, founded upon that omission is not valid.
As to the other objection, that the name of the apprentice is put in a subsequent part of the instrument, instead of that of the chairman: if upon the profert thereof made in the plaintiff's declaration the defendant had craved oyer, and demurred for the variance between the covenant set forth and that which appeared to be in the indentures, the objection might then have been fatal; but where the covenant stated in the declaration is once admitted to be as there stated, by a plea of covenants performed, he cannot afterwards be permitted to say there is no such covenant; and the production of the warrant afterwards upon the trial by the plaintiff is irregular, although it is often done when a declaration is mislaid, or not readily to be come at, it being presumable that the declaration has been drawn in conformity to it; and the court ought to take no notice of an inconsistency in the writing itself, discovered upon such an irregular reading. They cannot do it without a departure from the record and the issue submitted to the jury, which is, whether the defendant has performed that covenant that is set forth in the declaration. 3 Term, 302, 303; Doug., 302; H. Black. Rep., 91; 1 Stra., 298; 2 Stra., 1149; Kidd on Bills, 154, 155; 6 Rep., 45; 2 L. Ray., 852. And although the jury have found the covenant to be in the words of the indenture produced on the trial, which is variant from that stated in the declaration, it is not to be regarded; for they cannot give a verdict upon any point except that contained in the issue with which they are charged; and then the finding by them what the covenant really was, as well as that the covenants were not performed, is void as to that part of the verdict stating the covenant, and not to be proceeded upon or attended to as a part of the verdict at all. 2 Roll's Ab., 691; 2 Mo., 5; L. Ray., 390, 864, 1521; 2 Rep., 4; 2 Stra., 873; 5 Ba. Ab., 310. The Court must proceed upon the legal parts of the verdict only, that is to *Page 109 
say, that the covenant stated in the declaration has not been performed, and the assessment of damages for the nonperformance. Of course, the second objection must also be overruled, and the plaintiff must have judgment.
Judgment accordingly.
Cited: Threadgill v. Jennings, 14 N.C. 385; Dowell v. Davis, 15 N.C. 66.
(150)